# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

**REBECCA NATALIE GUILLORY**         **CIVIL ACTION NUMBER 08-1366**

**VERSUS**        **MAGISTRATE JUDGE METHVIN**

**MICHAEL J. ASTRUE, COMMISSIONER**        **BY CONSENT OF THE PARTIES**
**OF SOCIAL SECURITY**

## *MEMORANDUM RULING*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED** and the case **DISMISSED**.

### *Background and Commissioner's Findings*

Rebecca Guillory was born on June 11, 1981, and was 26 years old on the date of the hearing before the Administrative Law Judge (ALJ), on November 5, 2007. (Tr. 390). Guillory has a 12th grade education, and approximately one year of college. (Tr. 392). She had past relevant work as a loan clerk, cashier supervisor, cashier/checker, and orderly. (Tr. 17).

According to the procedural history outlined by the ALJ, Guillory filed applications for disability insurance benefits on August 17, 2005, and supplemental security income benefits on February 13, 2006. In both applications, Guillory alleged a disability onset date of July 7, 2005, due to surgery, liver damage, and stroke. (Tr. 36).

At the hearing, Guillory alleged disability due to "liver damage, a stroke, weakness, migraine headaches, TIA's[1], "staring" seizures, hypothyroidism, and swelling of her feet." (Tr. 16). She also alleged "memory loss." (Tr. 66).

---

[1] TIA is an abbreviation for Transient Ischemic Attack, which is "an episode in which a person has stroke-like symptoms for less than 24 hours, usually less than 1 - 2 hours." See http://www.nlm.nih.gov/medlineplus/ency/article/000730.htm. (9/22/2009).

The ALJ issued a decision on or about February 25, 2008,[2] finding Guillory not disabled at any time from the alleged date of onset through the date of the decision. (Tr. 19). This appeal followed.

In the sequential analysis, after finding Guillory had not engaged in substantial gainful activity since July 7, 2005, the ALJ found Guillory had a severe impairment: "stroke-like" episodes of unknown etiology. (Tr. 12). The ALJ discussed Guillory's other alleged impairments, but implicitly found them to be not severe. (Tr. 16, 17).

Guillory did not allege, and the ALJ did not find, that her impairment met or equaled in severity any of the listed impairments at the third step. (Tr. 12).

The ALJ assigned a residual functional capacity to Guillory as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform occasional lifting and/or carrying of ten to fifty pounds, frequent lifting and/or carrying of up to ten pounds, sitting for two hours at a time (and a total of six hours in an eight-hour workday), standing and/or walking for over two hours at one time (and a total of six hours in an eight-hour workday), no work requiring driving, and no work with exposure to hazards or machinery. (Tr. 13).

At the fourth step, with the aid of vocational expert testimony, the ALJ found Guillory could perform "some of her past relevant work." (Tr. 17). Specifically, the ALJ found Guillory would be capable of performing all of her past relevant work with the exception of orderly. (Tr. 17).

The ALJ proceeded to the fifth step in the analysis, "in an abundance of caution," due to the "lack of specific information regarding whether all of the Guillory's past work was considered as substantial gainful activity." (Tr. 17). At the fifth step, with the aid of vocational

---

[2]The exact date of the Decision is illegible, but is definitely in February, 2008.

expert testimony, the ALJ found Guillory could perform the representative occupations of information clerk and check cashier. (Tr. 18). The ALJ then found Guillory not disabled. (Tr. 19). This appeal followed.

### *Assignment of Errors*

Guillory raises the following errors on appeal:

I. The ALJ improperly rejected Guillory's treating physician, Dr. Hargrave's, opinions regarding her limitations;

II. The ALJ's finding that Guillory's testimony regarding the severity of her impairments was not entirely credible was not supported by substantial evidence of record;

III. The ALJ's residual functional capacity is not supported by substantial evidence of record.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. §404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other

similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

*Discussion*

I. Weight Given by the ALJ to the Opinion of Guillory's Treating Physician

Guillory raises as error the ALJ's rejection of Dr. Hargrave's opinion regarding her limitations, but did not brief the issue. In fact, the ALJ did adopt and assign controlling weight to the opinion of Dr. Hargrave, a neurologist and Guillory's treating physician, that Guillory "had the residual functional capacity to perform a modified range of sedentary work." (Tr. 17). Dr. Hargrave opined Guillory could sit or stand more than two hours at a time, could stand and walk at least six hours during an eight hour workday, and she could occasionally lift up to fifty pounds, but that with her episodes of left sided numbness and weakness, she could not drive or work near heavy machinery. (Tr. 221 - 223). The ALJ took into account Guillory's alleged occasional weakness, and in adopting a modified sedentary residual functional capacity, limited Guillory to "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

Apparently, what Guillory really argues is that the ALJ erred because she "did not consider or give credibility to . . . the findings by Dr. Hargrave and the testimony of the claimant that she experienced frequent headaches, episodes of arm and leg weakness which last about one hour per episode and occur about once per week, and that she frequently experiences pain or

other symptoms that are severe to interfere with her attention and concentration."[3] Thus, the court will proceed to the next asserted error, that the ALJ improperly discounted Guillory's credibility regarding her impairments and their severity.

II.     Discussion of ALJ's Credibility Determination

Although the ALJ is entitled to make credibility determinations, when medical evidence supports complaints of pain and the opinions of physicians, the ALJ must have good cause for his credibility decisions. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994); Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).

In this case, the ALJ's determination that Guillory's testimony regarding her limitations and her alleged impairments was not fully credible is supported by substantial evidence of record, as neither the medical records nor the opinion of her treating physician support her complaints.

First, Guillory's alleged impairments in the form of liver problems and surgery stem from a caesarean section on July 1, 2005. She had complications due to the pregnancy and surgery, including liver problems, and was kept in the hospital for approximately one month, but was discharged from the hospital, apparently with no permanent impairments, on July 28, 2005. (Tr. 79). The medical records support the ALJ's finding that her medical problems stemming from her pregnancy, including the HELLP syndrome, and her "liver problems" completely resolved. (Tr. 79).

The ALJ throughly discussed Guillory's hospitalization and reviewed in detail her medical records from that month. (Tr. 14). Guillory testified she was not under any medical care for liver problems, and took no medication for her alleged liver problems at the hearing.

---

[3]*Plaintiff's Brief* (rec. doc. 6), p. 7, referencing Tr. 219 - 223.

(Tr. 400). The ALJ noted in her decision that "claimant no longer requires treatment or medications for her previous liver problem." (Tr. 16). In response to questions about her thyroid problem, Guillory testified that when she took her prescribed medication, Synthroid, she had no problems. (Tr. 399, 400).

In her decision, the ALJ discounted Guillory's credibility, in part, due to her testimony that she was in a coma for 14 days while she was in the hospital in July, 2005. (Tr. 412, 17). The ALJ found "the objective medical evidence fails to support this allegation." (Tr. 17)

On 7/9/2005, it was noted she had "abnormal mentation." (Tr. 88). On 7/10/2005, she was "not responsive to command" but "she responds to painful stimulation." (Tr. 91). And on 7/11/2005, her mental status was "unchanged from yesterday." (Tr. 89). While it is unclear exactly when her mental status improved, by July 19, 2005, she was "alert and oriented." (Tr. 143). Thus, while not a major point, the ALJ's finding that Guillory was not actually in a "coma" for 14 days is supported by substantial evidence of record, and it was not error for the ALJ to discount Guillory's credibility based on same.

More importantly, the ALJ found that while Guillory alleged suffering from multiple strokes or seizures, there was no objective medical evidence supporting her allegations of "strokes" or TIAs, and her treating physician, Dr. Hargrave, opined that none of these alleged episodes were definitively strokes or seizures. (Tr. 17).

The medical records show multiple MRI's of Guillory's brain (Tr. 172, 206, 357), a carotid angiography (Tr. 171), a carotid ultrasound (Tr. 171), multiple chest x-rays (Tr. 175, 173), left shoulder x-ray (Tr. 176), multiple CT scans of her brain (Tr. 177, 205, 257, 295), an

echocardiogram (Tr. 178), a CT scan of the thorax (Tr. 260), a CT of her cervical spine (Tr. 293), a MR Angiogram of her brain (Tr. 358), and an EEG Report (Tr. 363).

The ALJ's thorough review of the medical records supports her findings that Guillory's testimony regarding her alleged impairments and the limitations caused thereby are not supported by *any* of these objective tests, nor by the opinion of Guillory's treating physician. None of these tests showed any abnormality that supports Guillory's complaints. While one of the MRI's stated there was a "probable tiny old infarct," claimant's treating physician, neurologist, Dr. Hargrave, disagreed. (Tr. 357). Dr. Hargrave stated "[t]he radiologist interpreted that there was a possible old stroke in the right pons, but I firmly disagree . . . ." (Tr. 356).

> Dr. Hargrave on August 8, 2007, summarized Guillory's medical status as follows:
>
> Stroke-like episodes of uncertain etiology. *The likelihood that these are TIA or vascular I think is extremely low*. Plus, she has had these episodes while on full dose Aggrenox.[4] Her symptoms persist for days, but she's had repeated MRIs without and evidence of brain ischemia, and without any evidence of large vessel stenosis.
>
> The likelihood that these are *atypical migraine is somewhat low because of the duration of the spells and we've done a normal EEG, and she's had spells while on antiseizure medicines.*
>
> Plan: I had a lengthy discussion with her about the diagnostic ambiguity. She seems to understand. I told her that I wish I could give her a definitive diagnosis, but I am afraid I can't.
>
> In the meantime, *since I don't think that these are seizures, I asked her to stop the Zonegran.[5]* Likewise, *since I don't think these are vascular episodes, I asked her to stop the Aggrenox.* I do not feel these recent spells are related to her prior HELLP syndrome.

---

[4]Aggrenox is prescribed to prevent stroke. See http://www.drugs.com. (9/22/2009).

[5]Zonegran is used to prevent seizures. See http://www.drugs.com. (9/22/2009).

> *I shared with her my opinion that it is extremely unlikely she will ever be functionally disabled from a neurologic standpoint given these recent spells.*
>
> * * *
>
> I offered to arrange her to see another neurologist, but she doesn't sound interested at this time and I'm not sure than any different outcome would occur given all the data that we have at this point in time either. (Tr. 356).

Thus, Dr. Hargrave's opinion was that she had not and was not suffering from any strokes, TIA's, seizures, migraines, or any residual effects from her HELLP syndrome suffered at the birth of her son in 2005, and that it was "extremely unlikely that she will ever be functionally disabled from a neurologic standpoint given these recent spells." (Tr. 356).

At the time of hearing on November 7, 2007, Guillory was still taking the Aggrenox, although she was advised by Dr. Hargrave to discontinue both the Aggrenox and the Zonegran. (Tr. 402, 356).

The ALJ's finding that Guillory was not credible is supported by substantial evidence of record, due the lack of objective medical findings supporting her complaints, and the opinion of Dr. Hargrave, her treating physician and neurologist, regarding the nature of her medical condition. Thus, the Guillory's second assignment of error is without merit.

III.     The ALJ's residual functional capacity is not supported by substantial evidence of record.

Finally, the undersigned finds the residual functional capacity assessment by the ALJ is supported by substantial evidence. The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a

claimant's disability status." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)

The ALJ adopted Dr. Hargrave's opinion regarding Guillory's residual functional capacity, except the ALJ gave Guillory a more limited lifting capacity . As discussed above, the ALJ thoroughly considered all of the medical evidence of record, and properly discounted Guillory's credibility regarding the severity of her impairments. Considering the above, and the lack of objective medical evidence in support of Guillory's alleged impairments, the ALJ's residual functional capacity is more than supported by substantial evidence of record.

Therefore, Guillory's argument that the ALJ's residual functional capacity assessment was unsupported by substantial evidence of record is without merit.

### *Conclusion and Recommendation*

For the foregoing reasons, the undersigned finds the ALJ's decision that Guillory was not disabled, as defined in the Social Security Act, from July 7, 2005, through the date of the decision, was made by proper application of relevant legal standards, and was supported by substantial evidence.

Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED.**

Signed at Lafayette, Louisiana, on September 22, 2009.

Mildred E. Methvin
United States Magistrate Judge